## STATE OF CONNECTICUT *v.* VANCE WILLIAMS
## (13082)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued December 1, 1987—decision released February 2, 1988

*John M. Massameno,* assistant state's attorney, with whom were *Frank S. Maco,* assistant state's attorney, and, on the brief, *John J. Kelly,* chief state's attorney, for the appellant (state).

*John A. Gawrych,* with whom was *Jamie V. Gregg,* for the appellee (defendant).

SHEA, J. The dispositive issue in this appeal is whether the defendant, Vance Williams, has standing to challenge the procedure by which a witness against him has been immunized under General Statutes § 54-47a.[1] We conclude that the defendant lacks stand-

---

[1] "[General Statutes] Sec. 54-47a. COMPELLING TESTIMONY OF WITNESS. IMMUNITY FROM PROSECUTION. (a) Whenever in the judgment of the chief state's attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of violence or any violation which is an offense under the provisions of title 25, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the chief state's attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

ing to raise such a challenge. There is error, and the case is remanded to the trial court with direction to permit the immunized witness to testify at the trial of this case.

The chief court administrator appointed Anthony V. DeMayo, a judge of the Superior Court, to conduct an inquiry pursuant to General Statutes (Rev. to 1985) § 54-47[2] into allegations of professional gambling and municipal corruption in the city of Torrington. During the course of that inquiry a witness, Daniel Sabia, invoked his right not to testify under the fifth amendment to the United States constitution. Thereafter, the special prosecutor assisting in the inquiry notified Sabia and his attorney that he would, pursuant to § 54-47a, submit to a judge of the Superior Court an application for an order directing Sabia to testify under a grant of immunity. That application was heard and granted by Judge DeMayo on August 26, 1985. Sabia later responded to the question posed.

The evidence Sabia gave, together with other evidence, led to the arrest of the defendant, a Torrington police officer, on charges of possessing cocaine and hindering prosecution. Prior to trial, the defendant filed a motion seeking to bar the admission into evidence of the opinion testimony of Sabia and others that substances they had provided to the defendant or had observed him possess or consume were in fact narcotic substances under our drug laws. During the course of a hearing concerning that motion, Sabia refused to testify and asserted his federal and state constitutional rights against self-incrimination.

---

[2] General Statutes (Rev. to 1985) § 54-47, has been repealed. Public Acts 1985, No. 85-611, § 9. It has been supplanted by provisions for an investigatory grand jury under General Statutes §§ 54-47c and 54-47d, effective October 1, 1985. Public Acts 1985, No. 85-611, §§ 2, 3. The repeal of this statute does not affect our analysis of the provisions of General Statutes § 54-47a (b).

The state's attorney then made a second application for an order directing Sabia to testify under a grant of immunity. In the argument that ensued, the trial court, *Moraghan, J.,* was apprised that it was Judge DeMayo who had acted upon the earlier application for the order directing Sabia to testify during the inquiry he was conducting. The defendant then claimed that a judge conducting an inquiry under § 54-47 could not, in essence, "wear two hats," and that the prior grant of immunity was, therefore, invalid. The court agreed but, nevertheless, after the state had applied for another grant of immunity to Sabia, granted this second application. Sabia then testified in accordance with the court's order in such a manner as to implicate the defendant in the crimes charged.

Notwithstanding its order directing Sabia to testify, the trial court, after defense counsel renewed his objection, later suppressed that testimony. The trial court relied on two separate grounds for excluding Sabia's testimony. First, the trial court determined that a judge who has been appointed for the purpose of an investigation under § 54-47 cannot grant immunity to a witness in connection with that inquiry. Second, the court held that our immunity statute required the state to establish an independent source for all immunized testimony whenever its admission is objected to by any party. The trial court concluded that, although the general rule of standing would forbid the vicarious assertion of fifth amendment rights, this case called for an exception because, in its view, the grant of immunity had been made without authority. The trial court also relied upon the last sentence of § 54-47a (b) as giving the defendant standing to challenge the admission of Sabia's testimony. Accordingly, the court ordered his testimony to be suppressed. The state then moved to dismiss with prejudice all pending charges; see *State v. Ross,* 189 Conn. 42, 51, 454 A.2d 266 (1983); and,

after that motion had been granted, sought permission to appeal. After a hearing, the motion for permission to appeal was granted. This appeal followed.

The state raises the following issues in challenging the trial court's exclusion of Sabia's testimony: (1) whether the immunity statute or considerations of public policy forbid a judge of the Superior Court who is conducting a judicial inquiry from performing the allegedly nondiscretionary act of granting an application for an order to compel a witness to testify before the inquiry; (2) whether, even if there were error in granting the application to compel testimony during the inquiry, the exclusionary rule would in any event be applicable; (3) whether the defendant has standing to contest the allegedly erroneous grant of immunity to Sabia; and (4) whether our immunity statute requires the state to establish an independent source for immunized testimony. In view of our conclusion that the defendant lacks standing to challenge the admissibility of Sabia's testimony, we shall not address the state's first two claims.

I

The trial court acknowledged that a defendant ordinarily lacks standing to challenge a grant of immunity to a witness who testifies against him. *United States* v. *Foster,* 478 F.2d 1001, 1003 (7th Cir. 1973); *State* v. *Melvin,* 390 A.2d 1024, 1029 (Me. 1978). The trial court determined, nevertheless, that because the grant of immunity by Judge DeMayo to Sabia was "clearly illegal" that "this case demand[ed] an exception to the general rule that one party has no standing to raise another's rights." We conclude that the circumstances of this case do not warrant a departure from the general principle that a defendant does not have standing to challenge the method by which a witness against him has been immunized.

The trial court relied on *Ellis* v. *United States,* 416 F.2d 791, 799 (D.C. Cir. 1969), for the proposition that a defendant has standing "to complain that his conviction was obtained in a case where the trial judge went outside his judicial province to grant immunity to a witness." We note initially that *Ellis* is not binding precedent on this court, in contrast to a decision by the United States Supreme Court. We decline to apply the rationale of *Ellis* to this case for two reasons. First, subsequent decisions by the United States Supreme Court, while not directly overruling *Ellis,* have emphasized that the right to be free from testimonial compulsion is a personal one that may not be asserted vicariously. *Fisher* v. *United States,* 425 U.S. 391, 398–99, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976); *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610–11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Second, the facts in *Ellis* were quite different from those in the case at bar. In *Ellis,* the District Court had usurped executive power by acting on its own initiative to grant immunity to a witness. The District Court in *Ellis* had assumed a role outside the scope of the judicial power. In the present case the state applied for an order directing Sabia to testify under a grant of immunity. The defendant concedes that any judge of the Superior Court except Judge DeMayo could properly have granted immunity to Sabia. We decline in the present circumstances to depart from the general rule that a defendant lacks standing to challenge the procedure by which a witness against him has been immunized. We hold that the defendant does not have standing in this case to challenge whether a judge of the Superior Court who is conducting a judicial inquiry may properly grant an application for an order to compel a witness to testify before the inquiry.

## II

The trial court also held that the defendant had standing to challenge the admissibility of Sabia's compelled

testimony under § 54-47a (b), because the last sentence of the statute provides that, "[w]henever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence." Acknowledging that its construction of our immunity statute might well produce a "bizarre" result, the trial court nevertheless concluded that the quoted provision requires the state, even when the immunized witness is not a defendant, to establish an independent source for immunized testimony whenever an objection is raised. We conclude that the trial court erred in construing our immunity statute to confer standing upon anyone but the immunized witness in a proceeding against the witness to require the state to establish an independent source for evidence derived from compelled testimony.

The state argues that the trial court's interpretation of the last sentence of the statute effectively renders the entire immunity statute unworkable. Section 54-47a (a) requires the state to establish that a grant of immunity "is necessary to the public interest." A serious question would arise whether immunized testimony was "necessary to the public interest" if "a source independent of the compelled testimony or evidence" existed. General Statutes § 54-47a (a) and (b). Under the court's interpretation of the statute the state is enmeshed in a virtually unsolvable conundrum. The state would have to provide independent evidence corroborating the testimony of an immunized witness before that compelled evidence might be admitted. It would be inappropriate, however, for the state to apply for immunity of a witness, if independent evidence were available of the facts to be elicted from the witness, because his testimony would not then be "necessary to the public interest." The court recognized that "[t]he

dilemma framed by the State is not insignificant." It concluded, nevertheless, that the last sentence of the statute required this strange result.

In determining the meaning of statutory language, this court must read a statute as a whole. *Kyrtatas* v. *Stop & Shop, Inc.,* 205 Conn. 694, 699, 535 A.2d 357 (1988); *Struckman* v. *Burns,* 205 Conn. 542, 546, 534 A.2d 888 (1987); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985). Moreover, where a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to "bizarre results" destructive of that purpose, the former should prevail. *Simko* v. *Zoning Board of Appeals,* 205 Conn. 413, 422–23, 533 A.2d 879 (1987) *(Shea, J.,* dissenting); *State* v. *Parmalee,* supra, 165.

If the last sentence of the statute, on which the trial court relied, stood alone, it would literally bar the testimony of any immunized witness, because such evidence must necessarily have been "discovered as a result of or otherwise derived from compelled testimony," quite apart from any question, such as that raised in this case, of the validity of the immunity grant. Thus, the purpose of the enactment, to enable the state to use testimony otherwise unavailable because of the privilege against self-incrimination, would be entirely defeated. The last sentence would effectively nullify the preceding provisions of the statute, because it would have to be shown that the evidence to be furnished by the immunized witness had been obtained from "a source independent of the compelled testimony or evidence." Such a self-contradictory result could not have been intended by the legislature.

The immunity created by § 54-47a (b) is contained in the sentence preceding the last one and is plainly intended to provide witnesses compelled to testify in

criminal proceedings against others with protection at least equivalent to that available under the constitutional privilege against self-incrimination. See *Kastigar* v. *United States,* 406 U.S. 441, 448–62, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). "No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence . . . ." General Statutes § 54-47a (b). It is plain that the protection afforded by this provision, like that inherent in the privilege, is expressly restricted to the immunized witness. The last sentence must be read in this light, because the references in the preceding sentence to prosecutions against "such witness" and to the use of derivative evidence "against him" would be superfluous if every defendant could object to evidence because compelled testimony was its source. General Statutes § 54-47a (b). The broad language upon which the trial court relied, "[w]henever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence," when read with the preceding sentence, implicitly refers to objections raised only by the immunized witness in proceedings against him and does not authorize other defendants to invoke the rights of the immunized witness. We perceive no intention on the part of the legislature to abandon the well established principle of standing that a defendant cannot rely upon a possible violation of another's rights. *Rakas* v. *Illinois,* 439 U.S. 128, 133–34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *State* v. *Morrill,* 197 Conn. 507, 540, 498 A.2d 76 (1985).

The trial court was concerned that the last sentence of § 54-47a (b) would become wholly superfluous if it were applicable to only those objections raised in a proceeding against the immunized witness, because the preceding sentence appears to provide the same protection to him against the use of his compelled testi-

mony and, in addition, provides transactional immunity, barring any prosecution, penalty or forfeiture "for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence." We need not consider whether the prohibition against use or derivative use of compelled testimony is necessarily redundant where transactional immunity has been given to the immunized witness. The sparse legislative history of § 54-47a clearly demonstrates that the General Assembly intended to provide both transactional and derivative use immunity to witnesses compelled under the statute to testify. Representative Lawrence Merly in discussing the statute in the House of Representatives remarked that "not only is the witness granted immunity from prosecution, but also any evidence which might be derived from his testimony cannot be used against him." 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3628. Nothing in this history, however, suggests an intention to afford protection to anyone except the immunized witness.

We do not view the last sentence of § 54-47a (b) as superfluous simply because it protects only immunized witnesses. Where such a witness is being prosecuted for a crime not related to a "transaction, matter or thing" mentioned in his previously compelled testimony, it may well be disputed whether evidence offered in proof of the unrelated crime has been discovered from use of his compelled testimony. In such event the last sentence makes it clear that it is not the defendant but the state that has the burden of establishing that the evidence has been obtained from "a source independent of the compelled testimony or evidence." A statutory provision allocating the burden of proof in this manner is not superfluous.

There is error, the judgment of dismissal is set aside and the case is remanded to the trial court with direc-

tion to permit the testimony of the immunized witness in this case.

In this opinion the other justices concurred.