### STATE OF CONNECTICUT *v.* DAVID PIERSON
### (13371)

HEALEY, SHEA, GLASS, COVELLO and SANTANIELLO, Js.

---

Argued June 10—decision released August 23, 1988

*Ronald E. Cassidento,* for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Frank Iannotti,* former assistant state's attorney, for the appellee (state).

SANTANIELLO, J. This case is an appeal from a remand hearing ordered by this court in *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986). In that case, the defendant had sought at trial to examine the victim's psychiatric social worker to discover whether he had any information that the defendant could use to impeach the victim's credibility. At the trial court proceedings, the defendant had been denied permission to inquire about the treatment of the victim because such information was shielded from disclosure by the psychiatrist-patient privilege.[1] On appeal, the defend-

---

[1] "[General Statutes] Sec. 52-146d. (Formerly Sec. 52-146a). PRIVILEGED COMMUNICATIONS BETWEEN PSYCHIATRIST AND PATIENT. DEFINITIONS. As used in sections 52-146c to 52-146i, inclusive:

ant claimed that his sixth amendment right to confront the principal witness against him had been violated because he had been refused permission to pierce the psychiatric privilege in order to challenge the victim's credibility. This court agreed with the defendant and remanded the case for further proceedings, ordering that the trial court conduct a "voir dire" of the psychiatric social worker to determine whether he knew of any information that would call into question the victim's credibility.

In remanding the case for further proceedings, this court specifically delineated the procedure to be employed during the hearing: "This preliminary inquiry may be conducted only with the consent of the witness sought to be impeached, but, unless such consent is forthcoming, the testimony of the witness must be stricken. The voir dire for the purpose of determining the existence of such impeaching evidence must be conducted in the courtroom in the presence of the defendant and his counsel, who shall be allowed to participate fully in the proceedings. . . . [I]f no such [impeachment] evidence is discovered, the judgment of conviction must stand." *State* v. *Pierson,* supra, 228–29.

"(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative."

Using the guidelines established by this court, the trial court upon remand conducted the required hearing. The victim did not appear. His attorney, however, did appear on his behalf and waived the psychiatrist-patient privilege. Counsel stated that he was waiving the privilege on behalf of the victim, that he was authorized to do so, and that the victim was aware of the implications of this waiver. There was no written authorization given to counsel. The defendant objected on the ground that, since the privilege was a personal and statutory one, the person entitled to exercise it needed to be present in court in order to waive it. This objection was overruled, and the trial court proceeded to a hearing on the issue of the contents of the psychological records as ordered by this court. The psychiatric social worker was thoroughly examined as to the testimonial capacity of the victim. At the completion of the hearing, the trial court ruled: "[T]here exists no significant evidence that would be admissible for purposes of impeachment." Consequently, the court allowed the defendant's conviction to remain intact in accordance with the direction of this court.

It is from the final ruling of the trial court that the defendant appeals claiming that the trial court erred in permitting the complaining witness to waive the psychiatric privilege, through counsel, without appearing personally before the court, in contravention of General Statutes § 52-146c.[2] The state claims that the

[2] "[General Statutes] Sec. 52-146c. PRIVILEGED COMMUNICATIONS BETWEEN PSYCHOLOGIST AND PATIENT. (a) As used in this section, 'person' means an individual who, for the purpose of securing psychological services, consults a licensed psychologist practicing in the area of clinical psychology.

"(b) Except as provided in subsection (c) of this section, in civil and criminal cases, in proceedings preliminary thereto and in legislative and administrative proceedings, a licensed psychologist shall not disclose any communication made to him by any person while he is engaged in the prac-

defendant lacks standing to challenge the victim's waiver of the psychiatric privilege especially when such waiver was demanded by the defendant to protect his right to confrontation.

We must first address the issue of the standing of the defendant to take this appeal. " 'Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.' " *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). The question of standing does not involve an inquiry into the merits of the case. It merely requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee in question. *Assn. of Data Processing Service Organization, Inc.* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970); *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971); *State* v. *Rado,* 14 Conn. App. 322, 325, 541 A.2d 124 (1988); *Reitzer* v. *Board of Trustees of State Colleges,* 2 Conn.

tice of clinical psychology unless the person or his authorized representative, as defined in section 52-146d, waives the privilege.

"(c) Relevant communications under this section shall not be privileged: (1) If a judge finds that any person after having been informed that the communications would not be privileged, has made the communications to a clinical psychologist in the course of a psychological examination ordered by the court, provided the communications shall be admissible only on issues involving the person's psychological conditions; or (2) if, in a civil proceeding, a person introduces his psychological condition as an element of his claim or defense or, after a person's death, his condition is introduced by a party claiming or defending through or as a beneficiary of the person, and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and psychologist be protected."

App. 196, 199–200, 477 A.2d 129 (1984). "[A] defendant ordinarily lacks standing to challenge a grant of immunity to a witness who testifies against him. *United States* v. *Foster,* 478 F.2d 1001, 1003 (7th Cir. 1973); *State* v. *Melvin,* 390 A.2d 1024, 1029 (Me. 1978)." *State* v. *Williams,* 206 Conn. 203, 207, 536 A.2d 583 (1988).

In this case, the defendant sought relief from this court allowing him the opportunity to cross-examine the psychiatric social worker of the victim to ascertain whether the victim had the mental capacity to testify or whether there was anything in the psychiatric information which might allow the defendant to challenge the credibility of the testimony of the victim. As a result of the action of this court, this case was remanded setting forth strict guidelines as to the procedure to be followed in the examination of the psychiatric social worker. The victim-witness was required to give his consent to this examination or else his testimony would have been stricken. The "voir dire for the purpose of determining the existence of such impeaching evidence" was required to be conducted in a courtroom in the presence of the defendant and his counsel who would be allowed to participate fully in the proceedings. *State* v. *Pierson,* supra, 228. These strict guidelines were adhered to by the trial court. The defendant was granted the rights denied him at the original trial to discover whether the psychiatric social worker had information that might affect the credibility of the victim. The court's action in accepting the victim's waiver through counsel without the presence of the victim has not prejudiced the defendant in his effort to obtain the impeachment evidence sought. The general principle of law that "a defendant does not have standing to challenge the method by which a witness against him has been immunized" is applicable. *State* v. *Williams,* supra, 208. The right to be free from testimonial compulsion is a personal one that may not be asserted vicar-

iously. *Fisher* v. *United States,* 425 U.S. 391, 398–99, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976); *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); *State* v. *Williams,* supra, 208. Like the marital privilege or the privilege against self-incrimination an erroneous denial of the psychiatrist-patient privilege does not infringe upon the right of any person other than the one to whom the privilege is given. See C. McCormick, Evidence (3d Ed.) §§ 83, 120. Under these circumstances, we decline to depart from the general rule that the defendant lacks standing to challenge the procedure by which a witness against him has been immunized and waives his immunity.

We conclude that the appeal must be dismissed because of the defendant's lack of standing to appeal upon the ground he has raised.

In this opinion the other justices concurred.