[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the defendant, the Board of Education of the Town of Ellington ("the School Board"), to terminate the plaintiff, Anne E. Harhay's, teaching position. The parties have filed briefs, and the court heard oral argument on May 18, 1994.
FACTS
The plaintiff, a tenured teacher in Ellington, was certified to teach art for grades prekindergarten through twelve. (Complaint, para. 2, Answer para. 2; ROR # 16, p. 22). She was employed by the School Board since 1981. (Return of Record ["ROR"] # 18.) The plaintiff's employment with the School Board is governed by a contract between the Ellington Education Association and the School Board. (Complaint, para. 3, Answer para. 4).
On April 14, 1993, the School Board voted to eliminate two elementary art teacher positions. (ROR # 12). By a letter dated July 30, 1993, the Ellington Public Schools informed the plaintiff that her insurance benefits would be terminated as of September 1, 1993. (ROR # 1). By a letter dated August 11, 1993, Joseph J. DeLucia, the Superintendent of the Ellington CT Page 8374 Public Schools ( the "Superintendent"), informed the plaintiff that at an upcoming School Board hearing he intended to recommend that the School Board place her employment contract under consideration for termination. (ROR # 2). Following that August 18, 1993, meeting, the Superintendent informed the plaintiff that the School Board had voted to place the termination of the plaintiff's contract under consideration. (ROR # 3). The Superintendent also informed the plaintiff of her rights under C.G.S. § 10-151, including her right to request a statement of reasons for the termination, her right to request a hearing, and her, right to be represented by counsel. (ROR # 3). On August 27, 1993, the plaintiff, pursuant to C.G.S. § 10-151(d), requested a statement of the reasons for the School Board's decision. (ROR # 4). In response, the School Board supplied the following reasons:
 1. Elimination of the position to which you were appointed, and there is no other position for which you are certified in the school system.
 2. Other due and sufficient cause. More specifically, and by way of amplification of the foregoing:
a. Budgetary considerations
b. Administrative recommendations, consistent with the Board of Education's Reduction in Force plan based on an analysis of curriculum and staffing needs.
(ROR # 4).
By a letter dated September 7, 1993 and pursuant to C.G.S. § 10-151(d), the plaintiff, through her lawyer, Attorney Noah Starkey, requested a hearing before an impartial hearing panel. (ROR Item 5). On September 8, 1993, Starkey sent a letter to the School Board informing them that the plaintiff had selected Attorney Mark Shapera as her designated panel member. (ROR # 6.) On September 10, 1993, via fax and regular mail, Attorney Dorsey, counsel for the School Board, informed Starkey that the School Board selected Attorney Thomas Sullivan as its designated panel member. In addition, the letter requested disclosure of the plaintiff's designated panel member. (ROR # 7). Starkey did not respond. (ROR # 8). By a letter dated October 15, 1993, and sent via fax and certified mail, Dorsey again asked Starkey to reveal whom the plaintiff selected as her panel member. (ROR # CT Page 8375 8). In response, Starkey sent a letter, dated October 18, 1993, to Dorsey stating that:
 the Board of Education was duly informed of [the plaintiff's] selection of a panel member on or about September 8, 1993 . . . . Any lack of timely communication was between your office and your client. We have carefully and diligently complied with the applicable law.
(ROR # 9).
Sometime after October 15, 1993, the two selected panel members designated Susan R. Meredith ("Meredith") as the third panel member and chairperson. (Plaintiff's Brief, p. 2, ROR # 16). On or around December 14, 1993, Meredith informed Dorsey and Starkey that the initial hearing on the plaintiff's matter would be January 5, 1994 at 10 A.M. (ROR # 10).
The hearing took place as scheduled (ROR # 16), and the panel issued its decision on March 8, 1994. (ROR # 17). The panel recommended to the School Board that it terminate the plaintiff's employment contract. Also, a majority of the panel concluded that the termination of the plaintiff's employment was properly conducted under the provisions of C.G.S. § 10-151(d). (ROR # 17). At a meeting held March 16, 1994, the School Board voted to accept the panel's recommendation to be effective March 17, 1994. (Complaint, para. 32, Answer para 32). The plaintiff appealed the School Board's decision to the trial court, pursuant to C.G.S. § 10-151(f).
On appeal to the court, the plaintiff argues that the School Board's decision to terminate her contract was arbitrary, capricious, illegal, and an abuse of discretion because:
 1. The hearing requested by the appellant in the present case, pursuant to the provisions of Section 10-151(d) of the General Statutes, began more than fifteen days after the receipt of her request for such a hearing by the defendant board.
 2. The impartial panel submitted written findings and a recommendation to the defendant board as to the disposition of the pending administrative matter against the appellant more than ninety days after the defendant board received the appellant's request for a hearing. CT Page 8376
 3. The elimination of the elementary school art teaching positions, constitutes a violation of Section 10-16b and 10-4a of the General Statutes.
 4. The termination of the appellant's contract constitutes a violation of the equal protection clauses of the United States Constitution and the Constitution of the State of Connecticut.
 5. The School Board prejudged the issue of the termination of the appellant's contract.
 6. By conducting a closed termination hearing the School Board violated C.G.S. § 1-21 and § 10-151(d).
 7. The plaintiff's due process rights under the Connecticut Constitution and the U.S. Constitution were violated in that she was not "allowed or permitted to introduce evidence with respect to the issues of the defendant's compliance with Section 10-16b and 10-4a of the General Statutes of the State of Connecticut . . . and the maintenance of an elementary art program as required by state statutes and was prohibited from introducing evidence regarding her current assignment to non-art duties during the current school year."
8. The School Board's decision of March 16, 1994, is untimely in that the appellant was entitled to remain under contract until completion of the then current school year of 1993-1994 pursuant to provision of subsection 10-151(d) of the General Statutes.
AGGRIEVEMENT
"Pleading and proof of aggrievement is a prerequisite to a trial court's jurisdiction over the subject matter of an appeal."Blau v. State Board of Education, 19 Conn. App. 428, 430 (1989). "Unless a party can establish aggrievement, that party has no standing to appeal. General Statutes § 4-183(a)." Id. A party must demonstrate a specific personal and legal interest in the subject matter of the decision and establish that such interest has been specially and adversely affected by the decision. Boardof Education v. State Board of Education, 38 Conn. Sup. 712, 715
(App. Sess. 1983). In the present case, during oral argument, the plaintiff testified that the School Board's decision terminated her employment contract. Since then she has been unable to secure new employment, which resulted in a diminution CT Page 8377 of income. A tenured teacher's right to continued employment implicates a property interest. Rado v. Board of Education,216 Conn. 541, 555 (1990). Because the School Board's decision deprived the plaintiff of this interest, the court finds the plaintiff is aggrieved and has standing to bring this appeal.
STANDARD OF REVIEW
"When considering termination of a tenured teacher's employment contract, a school board `acts like an administrative agency, in a quasi-judicial capacity . . . ." Barnett v. Boardof Education, 232 Conn. 198 (1995) (citations omitted). "The credibility of witnesses and the determination of issues of fact are matters within its province." Conley v. Board of Education,143 Conn. 488, 492 (1956). The court's function in reviewing the board's action is "to determine whether the board has acted illegally and not to substitute [its] judgment for that of the board . . . ." Petrino v. Board of Education, 179 Conn. 428,430 (1980). "The question for the court, bearing in mind the statutory requirement that the decision of the board must be supported by a preponderance of the evidence is whether the board, in reaching its conclusions . . . acted illegally or in abuse of the discretion reposed in it by law. The question is not whether the trial court or this court would have reached the same conclusion as the board." Conley v. Board of Education, supra, 498.
In the present case, the plaintiff first argues that the statutory mandates of C.G.S. § 10-151 were violated in that the hearing before an impartial panel was conducted more than fifteen days after her request and the panel submitted written findings more than thirty days after her initial request for a hearing. Accordingly, she argues that the final termination was unlawful. In response, the defendant concedes that hearings and findings were not conducted within the time periods specified by the statute. It argues, however, that, because the plaintiff caused the delay, she should be estopped from asserting the claim. In addition, it contends that the delay resulted in no prejudice to the plaintiff because she remained employed by the School Board until the issuance of the School Board's final decision. During oral argument, the defendant also argued the time frames specified by C.G.S. § 10-151 are merely directory and, therefore, noncompliance does not invalidate the School Board's termination decision. CT Page 8378
The plaintiff also argues that her due process rights were violated in that she was prohibited from submitting evidence regarding the School Board's obligations to provide the teaching of arts pursuant to C.G.S. §§ 10-16b and 10-4. In response, the defendant argues that C.G.S. § 10-151 is limited in scope, and the panel lacks authority to hear matters concerning educational policy.
The plaintiff next asserts that the record lacks sufficient evidence to support a finding that the plaintiff was junior to other art teachers whose contracts were maintained. In response, the defendant argues that there is a preponderance of evidence in the record to support a finding that the relevant contractual provision was followed.
The other bases for the appeal stated in the complaint were not briefed. As such, they are deemed abandoned. State v.Ramsundar, 204 Conn. 4, 16 (1987), cert. denied, 484 U.S. 995
(1987).
I. THE TIME PERIODS PROMULGATED BY C.G.S. § 10-151(d) WITH RESPECT TO THE COMMENCEMENT OF THE HEARING AND WITH RESPECT TO THE REPORT AND RECOMMENDATION OF THE HEARING PANEL ARE DIRECTORY.
Neither party submitted nor did the court locate any case that discusses whether the time limits promulgated by C.G.S. § 10-151 are mandatory and invalidate any noncomplying action. Moreover, a review of the statute's legislative history sheds no light on the issue. See Conn. Joint Standing Committee Hearings, Education. 1949 Sess., p. 5. To determine whether the time frame set forth in C.G.S. § 10-151(d) is mandatory or directory, the court examines its statutory scheme.
The governing statutory subsection in this appeal, C.G.S. § 10-151(d), the Teacher Tenure Act, "provides for continuing employment of tenured teachers, except that a teacher may be terminated for inefficiency or incompetence, insubordination, moral misconduct, medical disability, elimination of the teaching position or loss of the position to another teacher, or other due and sufficient cause." Kolenberg v. Board of Education,206 Conn. 113, 118-20 (1988), cert. denied, 487 U.S. 1236 (1988). The statute includes procedures for notice to the teacher that her contract is under consideration for termination; a hearing may be had on the matter before an impartial panel, and she has CT Page 8379 the right to appeal the decision to the superior court. Id., 120.
Specifically, C.G.S. § 10-151(d) provides that:
 Within twenty days after receipt or written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing . . . . Such hearing shall
commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension. [In addition] [w]ithin ninety days after receipt of the request for a hearing, the impartial hearing panel . . . unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher.
(Emphasis added.)
The use of the word "shall" in a statute is significant but does not automatically create a mandatory duty. Caron v. InlandWetlands Watercourses, 25 Conn. App. 61, 66 (1991), aff'd,222 Conn. 269 (1992). "The test for determining whether a statutory requirement is mandatory or directory is whether the prescribed mode of action relates to a matter of substance or convenience. Provisions relating to matters of substance are mandatory, whereas provisions designed to secure order, system, and dispatch in the proceedings [are] generally held to be directory." Yanniv. DelPonte, 31 Conn. App. 350, 354 (1993) (failure to mail notice of suspension of a driver's license by certified mail does not render the decision ineffective). As the plaintiff points out, it is likely, inter alia, that the legislature passed the fifteen day rule to promote an expeditious review of the termination and protect tenured teachers from arbitrary and capricious delay and monetary injury. Redman v. Board ofRegents, 102 N.M. 234, 693 P.2d 1266 (1984) (interpreting similar language in a similar statute). Accordingly, the provision relates to a matter of convenience. "A statutory provision of convenience is mandatory when that provision is accompanied by language that expressly invalidates an action taken after noncompliance with it." Yanni v. DelPonte, supra, 354, see alsoCaron v. Inland Wetlands Watercourses, supra, 61 and cases cited therein. No invalidating language appears in C.G.S. § 10-151(d). Also, while C.G.S. § 10-151(d) contains a consent CT Page 8380 provision for extending the time frame, this does not by itself mean the time constraints are mandatory. Leo Fedus SonsConstruction Co. v. Zoning Board of Appeals, 225 Conn. 432, 440-443,446, 623 A.2d 1007 (1993). "Unless there is reason to believe that the legislature intended that the duty not be performed at all except within the time prescribed or that the time restriction should be considered a limitation upon the power of the tardy officer, failure to act within the time specified should not invalidate the action." Blau v. State Board ofEducation, supra, (holding the time period promulgated in C.G.S. § 10-186 in which a hearing board must render it's decision under C.G.S. § 10-186 is directory.) Because the statutory time periods relate to a matter of convenience and the statute lacks language expressly invalidating any noncomplying decision, the court finds that these time periods are directory.
While a Connecticut court has noted that the procedural requirements of C.G.S. § 10-151 should be strictly followed, that case involved a situation where the delay resulted in prejudice to the plaintiff. LaCroix v. Board of Education, 2 Conn. App. 36,40 (1984), reversed in part on other grounds, 199 Conn. 70
(1986). In LaCroix the board failed to provide the plaintiff, a tenured teacher, with notice that his contract was under consideration for termination and failed to provide him with a hearing within fifteen days of his request. During the pendency of the hearing, the board terminated the plaintiff's position, and he was unemployed for two months. Thus, the board's noncompliance resulted in prejudice to the plaintiff. Under this fact pattern, the court held that "a board of education may not terminate a teacher's contract of employment unless the board first notifies the teacher that such action is `under consideration.'" Id., 41. Because the court's holding was based on the failure to give notice before termination, any statement concerning the time periods is dictum.
The present case is factually distinguishable from LaCroix.
First, it involves no prejudice to the plaintiff. She remained employed by the School Board until it made the final termination decision. Second, the plaintiff was partially to blame for the delay. The court declines to follow the dictum in LaCroix and holds that the time periods specified in C.G.S. § 10-151(d) are directory.
II. EVIDENCE REGARDING THE BOARD'S OBLIGATIONS UNDER C.G.S. 10-16bCT Page 8381 and 10-4a ARE OUTSIDE THE SCOPE OF A § 10-151 HEARING.
While Connecticut cases have consistently held that pursuant the C.G.S. § 10-151(d) a teacher whose termination is under consideration is entitled to, inter alia, an opportunity for a meaningful hearing to contest the termination, see e.g., LaCroixv. Board of Education, supra, 86, the issues reviewable by the hearing panel are limited in scope. Yaffe v. Board of Education,34 Conn. Sup. 115, (1977). The panel can only consider "(1) that the position to which a teacher was appointed has been eliminated; and (2) that there exists no other position to which such a teacher might be appointed if qualified." Yaffe v. Boardof Education, supra, 120-21. In Yaffe, the plaintiff, a reading supervisor, appealed the decision to terminate her contract alleging that her due process rights were violated because she was prevented from introducing evidence as to the need for a reading supervisor in the school system. In upholding the decision of the board, the court held that because a hearing panel can only consider specific issues, a determination of educational policy was irrelevant to a termination hearing. Id., 127.
The present case involves an analogous situation. The plaintiff argues that her due process rights were violated in that she was prohibited from submitting evidence regarding whether C.G.S. §§ 10-16b and 10-4a require the teaching of arts by legally qualified teachers.
Section 10-16(b) provides in pertinent part:
 (a) In the public schools the program of instruction offered shall include at least the following subject matter, as taught by legally qualified teachers, the arts;
 (b) Each local and regional board of education shall attest to the state board of education that such local or regional board of education offers at least the program of instruction required pursuant to this section, and that such program of instruction is planned, ongoing and systematic.
 (c) The state board of education shall make available curriculum materials and such other materials as may CT Page 8382 assist local and regional boards of education in developing instructional programs pursuant to this section.
Section 10-4a provides in pertinent part, :
 the educational interest of the state shall include the concern of the state that: (1) that each child shall have for the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) that each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement . . .; (3) that the mandates in the general statutes pertaining to education with the jurisdiction of the state board of education be implemented.
The court is persuaded by the logic promulgated in the Yaffe
decision. In addition, the court agrees with the defendant that the holding in Tomlinson v. Board of Education, 226 Conn. 704,629 A.2d 333 (1993) merely requires that the hearing officer make findings on the public policy claim. In the present case, the panel did consider the plaintiff's public policy claim and made a finding that the question of whether the statutes require the teaching of arts by legally qualified teachers was beyond its statutory jurisdiction. (ROR # 17 p. 6-7.) Accordingly, because of the limited scope of a § 10-151 hearing, the §§ 10-16b and10-4a evidence was immaterial to the issues before the panel. The court finds no error in the panel's refusal to allow it.
Also, in order for a party to bring an action predicated on a statute, that party must have standing. Shaskan v. WalthamIndustries Corp. , 168 Conn. 43, 48-49, (1975). "The question of standing . . . requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute . . . in question." Statev. Pierson, 208 Conn. 683, 687, 546 A.2d 268 (1988), cert.denied, 489 U.S. 1016 (1989). The state's statutory duty under C.G.S. §§ 10-16b and 10-4a is to the student, and it is the student's interests that are protected. See Horton v. Meskill,187 Conn. 187, 195 (1982). Thus, it is the student and not the teacher who is the proper party to bring a suit alleging a violation of these statutes. Consequently, the plaintiff lacks standing to raise issues under §§ 10-16b and 10-4a. The panel CT Page 8383 did not err in refusing to hear the §§ 10-16b and 10-4a evidence.
III. There is a Preponderance of Evidence in the Record that Supports a Finding That the Plaintiff Was Junior To Art Teachers Whose Contracts Were Not Terminated.
In the present case, the plaintiff argues that the record fails to support a finding that the plaintiff was junior to the other art teachers. A court will not overturn a board's decision if it is supported by a preponderance of evidence. Conley v.Board of Education, supra, 143 Conn. 498. The preponderance of the evidence standards is the same as in any civil action, i.e. "the evidence must, when considered fairly and impartially induce a reasonable belief that the fact in issue is true." Id., 497. "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence." Tomlinson v. Board of Education, supra, 226 Conn. 714.
The decision to terminate the plaintiff was made pursuant to § 10-151(d)(5), which permits termination of a tenured teacher
 when there is an elimination of the position to which the teacher was appointed or loss of position to another teacher, if no other position exists to which teacher may be appointed if qualified, provided such teacher, if qualified shall be appointed to a position held by a teacher who has not attained tenure.
The subsection further provides that "the determination of the individual contract . . . shall be made in accordance with either "a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization."
In the present case, the governing contract provides for a layoff procedure in which the least senior teacher will be laid off when there is an elimination of a position. (See ROR # 11, Art. XI(A)(2)(b)). The contract also provides that to displace another teacher based on seniority, "a tenured teacher must be certified to hold [the position of a teacher to be displaced] and be able to show evidence of qualification for such position as determined by the Superintendent." (ROR # 11, Art. XI(A)(b)(2)). In the hearing panel's decision, it noted that "[t]he superintendent of schools testified that [the plaintiff] and the CT Page 8384 other elementary art teacher were chosen for layoff in accordance with the layoff procedure in the collective bargaining agreement." (ROR # 17, p. 7.) The court agrees with the defendant that this evidence reasonably supports the School Board's finding that the layoff provisions of the governing contract were followed.
The plaintiff's appeal is dismissed.
Sferrazza, J.