******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* MICHAEL GASTON
## (AC 43499)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

Convicted of the crime of murder in connection with the shooting death of the victim, the defendant appealed, claiming that the trial court committed plain error pursuant to the applicable rule of practice (§ 60-5) when it permitted W, the key witness against him, to testify instead of accepting W's invocation of his fifth amendment right against self-incrimination. W previously had been charged with felony murder, robbery in the first degree and conspiracy to commit robbery in the first degree in connection with the victim's death. A different trial court found no probable cause with respect to the felony murder charge against W and, after a trial, found him not guilty of robbery in the first degree and conspiracy to commit robbery in the first degree. When W invoked his fifth amendment privilege at the start of the state's direct examination of him, the court instructed counsel who had represented W during the proceedings in W's case to advise W of his rights. W then testified against the defendant, who did not object to or seek to preclude W's testimony. *Held* that this court lacked subject matter jurisdiction over the defendant's appeal, as he lacked standing to challenge the trial court's rejection of W's invocation of his fifth amendment privilege against self-incrimination; that right is a personal privilege that adheres to the person and not to information that may incriminate him, and, accordingly, the appeal was dismissed.

Argued September 22—officially released November 10, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of murder, robbery in the first degree, conspiracy to commit robbery in the first degree and felony murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *D'Addabbo, J.*; verdict of guilty of murder, robbery in the first degree and felony murder; thereafter, the court vacated the verdict as to robbery in the first degree and felony murder, and rendered judgment of guilty of murder, from which the defendant appealed. *Appeal dismissed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Michael Gaston, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. The threshold issue in this appeal is whether the defendant has standing to challenge the trial court's initial decision refusing to accept a key state witness' invocation of his fifth amendment right against self-incrimination and, following the witness' consultation with counsel, permitting the witness to testify. We conclude that the defendant does not have standing to raise this claim and, accordingly, we dismiss this appeal.

The following procedural history and facts are relevant to our resolution of this appeal. On June 7, 2016, the defendant was arrested in connection with a robbery and an assault that occurred on May 16, 2016, resulting in the death of the victim, Marshall Wiggins. By way of a substitute long form information dated May 31, 2018, the defendant was charged with murder in violation of § 53a-54a, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), and felony murder in violation of General Statutes § 53a-54c. The defendant pleaded not guilty to the charges and elected to be tried by a jury. The trial began on May 31, 2018.

At trial, the state called as its key witness Laurence Washington, who was the sole witness to the underlying incident called by the state. In connection with the same incident, Washington previously had been charged with felony murder in violation of § 53a-54c, robbery in the first degree in violation of § 53a-134 (a) (2), and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2). After a probable cause hearing, the trial court, *Crawford, J.*, made a finding of no probable cause with respect to the felony murder charge against Washington. Following a court trial conducted in 2017, Washington was found not guilty of the charges of robbery in the first degree and conspiracy to commit robbery in the first degree.

Thereafter, during the defendant's trial, at the start of the state's direct examination of Washington, Washington almost immediately invoked his fifth amendment privilege against self-incrimination. Although the trial court, *D'Addabbo, J.*, informed Washington that he no longer had charges pending against him, and, therefore, he had nothing for which he could incriminate himself, Washington continued to assert the privilege. The court then stated: "[B]efore anything happens, I think it would be appropriate if we let you speak to an attorney." The court located an attorney, Dennis McMahon, in the courthouse to advise Washington of his rights and then instructed the attorney to remain in the courtroom in

the event Washington desired to speak with him. Attorney McMahon had represented Washington in the aforementioned probable cause hearing and robbery trial. After speaking with counsel, Washington returned to the witness stand. Upon his return to the witness stand, the court asked Washington a series of questions, including if the attorney "answer[ed] all [of] the questions that [Washington] had for him . . . ." The court also asked Washington if he "need[ed] any more time to answer any questions . . . ." Last, the court asked if Washington would "be answering questions" once he returned to the witness stand. Washington answered each of the preceding questions, the first and last in the affirmative, and the second in the negative, and then proceeded to testify against the defendant. At no time did the defendant object to or otherwise seek to preclude Washington's testimony.

On June 6, 2018, the jury found the defendant guilty of murder in violation of § 53a-54a, robbery in the first degree in violation of § 53a-134 (a) (2), and felony murder in violation of § 53a-54c, and not guilty of conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2). On July 25, 2018, pursuant to *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), the trial court vacated the conviction of robbery in the first degree and felony murder, subject to reinstatement in the event that "there is a reversal on appeal and a retrial," and sentenced the defendant on the murder conviction to fifty years of incarceration, with a mandatory minimum term of incarceration of twenty-five years. This appeal followed.

Relying on Practice Book § 60-5, the defendant's sole claim on appeal is that the trial court committed plain error by failing to accept Washington's invocation of his fifth amendment right against self-incrimination and thereafter permitting him to testify after he had consulted with counsel.[1] The defendant asserts that the court should have excused Washington after he had invoked his fifth amendment privilege. In response, the state argues, as an initial matter, that the defendant lacks standing to challenge the court's decision in that regard, and, therefore, this court lacks subject matter jurisdiction to entertain the defendant's claim. We agree with the state.

We begin by reviewing the well established principles of standing. "Generally, standing is inherently intertwined with a court's subject matter jurisdiction. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 285, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017). "A determination regarding standing concerns a question of law over which we exercise plenary review." *World Business Lenders, LLC*

v. *526-528 North Main Street, LLC*, 197 Conn. App. 269, 273, 231 A.3d 386 (2020).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . The question of standing does not involve an inquiry into the merits of the case. It merely requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 664, 881 A.2d 1005 (2005).

Relying on, inter alia, *State* v. *Williams*, 206 Conn. 203, 536 A.2d 583 (1988), the state argues that the defendant lacks standing to challenge the court's rejection of Washington's invocation of his fifth amendment right against self-incrimination because it is a personal privilege. The defendant contends that he has standing because he is an aggrieved party challenging what he characterizes as an evidentiary ruling made by the trial court. More specifically, he asserts that he has an interest in whether Washington could testify after invoking his fifth amendment right and that he has suffered an injury because the court allowed Washington, the state's key witness, to testify against him. We agree with the state and reject the defendant's contentions.

Courts have routinely held that "the [f]ifth [a]mendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him." (Emphasis omitted.) *Couch* v. *United States*, 409 U.S. 322, 328, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973). "By its very nature, the privilege [against compulsory self-incrimination] is an intimate and personal one. It respects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation." Id., 327.

In *State* v. *Williams*, supra, 206 Conn. 203, our Supreme Court applied the "general principle that a defendant does not have standing to challenge the method by which a witness against him has been immunized." Id., 207. In *Williams*, the chief court administrator appointed the Honorable Anthony V. DeMayo, a judge of the Superior Court, to conduct an inquiry into allegations of professional gambling and municipal corruption in the city of Torrington. Id., 205. During the course of the inquiry, the court granted immunity, under General Statutes § 54-47a, to a witness who had previously invoked his fifth amendment privilege against self-incrimination. Id. The defendant filed a motion seeking to bar the admission of the witness' testimony on the basis of that grant of immunity. Id. The trial court found that the prior grant of immunity was invalid

because it was Judge DeMayo who acted on the earlier application for immunity, and he could not, in essence, "wear two hats . . . ." (Internal quotation marks omitted.) Id., 206. Nevertheless, after the state had applied for another grant of immunity so that the witness would testify in the hearing on that motion, the court granted the second application. Id. The witness then testified in accordance with the court's order in such a manner as to implicate the defendant in the crimes charged. Id.

"The trial court concluded that, although the general rule of standing would forbid the vicarious assertion of fifth amendment rights, this case called for an exception because, in its view, the grant of immunity had been made without authority." Id. It reasoned that because the grant of immunity by Judge DeMayo was " 'clearly illegal,' " the circumstances demanded an exception to the general rule that a party has no standing to assert a privilege belonging to another. Id., 207. The trial court later suppressed the testimony. Id., 206.

On appeal, our Supreme Court concluded that the circumstances of the case did not warrant a departure from the general principle that a defendant does not having standing to challenge the method by which a witness against him has been immunized. Id., 207. In deciding *Williams*, our Supreme Court relied on the well settled principle that "the right to be free from testimonial compulsion is a personal one that may not be asserted vicariously." Id., 208, citing *Fisher* v. *United States*, 425 U.S. 391, 398–99, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976), and *Broadrick* v. *Oklahoma*, 413 U.S. 601, 610–11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); see also *State* v. *Pierson*, 208 Conn. 683, 686–89, 546 A.2d 268 (1988) (defendant lacks standing to challenge witness' waiver of psychiatrist-patient privilege), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989); *State* v. *Pierson*, supra, 689 ("[l]ike the marital privilege or *the privilege against self-incrimination* an erroneous denial of the psychiatrist-patient privilege does not infringe upon the right of any person other than the one to whom the privilege is given" (emphasis added)).

We conclude that the defendant's particular challenge in *State* v. *Williams*, supra, 206 Conn. 203—i.e., to the postinvocation grant of immunity pursuant to § 54-47a to a witness who testified against him—is substantially similar to the sole claim raised in the present appeal— i.e., that Washington should not have been permitted to testify after he initially invoked his fifth amendment privilege against self-incrimination. In light of the similarity between such claims, we align our analysis with the standing principles applied in *Williams* by which we are bound and conclude that the defendant in the present case lacks standing to challenge the trial court's rejection of Washington's invocation of his fifth amendment privilege against self-incrimination.[2] Accordingly, we lack subject matter jurisdiction over this appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The defendant concedes that this claim was not preserved for appellate review, and he does not seek review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), because he characterizes his claim as an evidentiary, nonconstitutional claim.

[2] We recognize that there are numerous cases in which our Supreme Court and this court have addressed the merits of a defendant's challenge to a trial court's *allowance* of a witness' invocation of his fifth amendment right against self-incrimination. See, e.g., *State* v. *Simms*, 170 Conn. 206, 207–10, 365 A.2d 821 (concluding that defendant's right to compulsory process under sixth amendment to federal constitution was not violated by trial court's allowance of witness' invocation of fifth amendment privilege against self-incrimination), cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); *State* v. *Luther*, 152 Conn. App. 682, 697–701, 99 A.3d 1242 (concluding that defendant's constitutional right to present defense was not violated by trial court's allowance of witness' invocation of fifth amendment privilege against self-incrimination), cert. denied, 314 Conn. 940, 108 A.3d 1123 (2014); *State* v. *Ayuso*, 105 Conn. App. 305, 309–15, 937 A.2d 1211 (concluding that defendant's right to compulsory process under sixth amendment to federal constitution was not violated by trial court's allowance of witness' invocation of fifth amendment privilege against self-incrimination), cert. denied, 286 Conn. 911, 944 A.2d 983 (2008); *State* v. *Mourning*, 104 Conn. App. 262, 275–77, 934 A.2d 263 (same), cert. denied, 285 Conn. 903, 938 A.2d 594 (2007); *State* v. *Brown*, 22 Conn. App. 521, 524–27, 577 A.2d 1120 (same), cert. denied, 216 Conn. 825, 582 A.2d 204 (1990).

As an initial matter, we note that, in those cases, the courts did not address the question of standing. More significantly, however, the claims addressed on the merits in those cases involved the trial court's *acceptance* of a witness' invocation of his fifth amendment privilege against self-incrimination, which may conflict with the accused's constitutional rights to compel testimony and/or to present a defense, whereas, in the present case, the defendant challenges the court's *rejection* of Washington's invocation of such privilege, akin to the claim in *Williams*. Accordingly, we perceive no conflict between the merits discussions in the aforementioned cases and our holding herein.