******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEUTSCHE BANK TRUST COMPANY AMERICAS,
TRUSTEE *v.* LYNN DEGENNARO ET AL.
(AC 35149)

Beach, Robinson and Flynn, Js.*

*Argued December 2, 2013—officially released April 29, 2014*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Hon. John W. Moran, judge trial
referee.)

*Steven P. Kulas*, for the appellant (named defendant).

*Marissa Delinks*, with whom, on the brief, was
*Andrew L. Baldwin*, for the appellee (substitute
plaintiff).

*Opinion*

BEACH, J. The defendant Lynn DeGennaro[1] appeals from the judgment of strict foreclosure following the summary judgment rendered in favor of the named plaintiff, Deutsche Bank Trust Company Americas, as trustee.[2] The defendant claims that the trial court erred in (1) granting the plaintiff's motion for summary judgment as to liability, and (2) rendering a judgment of strict foreclosure. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 2010, the plaintiff brought an action alleging that in December, 2003, the defendant executed a promissory note in the amount of $154,700 in favor of American Mortgage Network, Inc. (American), which note was secured by a mortgage granted to Mortgage Electronic Registration Systems, Inc., as nominee for American on property located at 9 East Hill Road, Oxford, and that the defendant was in default on that note. The defendant filed an answer and special defenses, which included a defense of loan modification. The plaintiff filed a motion for summary judgment as to liability only, and submitted evidence in support of its motion. The defendant filed an objection to the motion for summary judgment and submitted evidence in support of her objection.

The court granted the plaintiff's motion for summary judgment as to liability. The court found that the defendant had obtained a loan in the amount of $154,700 on December 8, 2003, and executed a promissory note in favor of American. The defendant also executed a mortgage dated December 8, 2003, as security for the repayment of the promissory note. The court determined that "[b]y her own admission, the defendant has defaulted on payment due under the promissory note," and, accordingly the court found that there was no genuine issues of fact regarding liability. The court further determined that none of the defendant's special defenses had merit. The plaintiff filed a motion for judgment of strict foreclosure, which the court granted. This appeal followed.

I

The defendant first claims that the court erred in granting the plaintiff's motion for summary judgment as to liability. We disagree.

"The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The

party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a moving party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Hopkins* v. *Balachandran*, 146 Conn. App. 44, 51, 76 A.3d 703 (2013).

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [I]t is only [o]nce [the] [movant's] burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] [nonmovant] to show that a genuine issue of fact exists justifying a trial." (Citation omitted; internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013).

The defendant argues that the court erred in granting the plaintiff's motion for summary judgment because the evidence submitted with her objection to the motion for summary judgment raised a genuine issue as to whether there was both an oral modification and a written modification to the terms of the loan.[3] The court found, however, that the defendant had defaulted on payment due under the promissory note, and determined that the defendant's defense alleging modification was "without foundation" because the exhibits did not include any modified mortgage notes or other documents that might have raised a genuine issue as to whether there had been an effective modification.

The defendant did not create a genuine issue of material fact by suggesting that there was an oral modification. See *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 590, 715 A.2d 807 (1998) ("[a] material fact is a fact that will make a difference in the result of the case" [internal quotation marks omitted]). In her affidavit, the defendant states that an oral modification was entered into. This fact, however, is not material because, as a matter of law, an oral modification would be ineffective.

The alleged oral modification could not have complied with the statute of frauds pursuant to General Statutes § 52-550, which provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement . . . is made in writing and signed by the party . . . to be charged . . . (4) upon any agreement for the sale of real property or any inter-

est in or concerning real property . . . or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars. . . ." "A modification of a written agreement [for a loan exceeding $50,000] must be in writing to satisfy the statute of frauds." *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 419, 679 A.2d 421 (1996);[4] see also General Statutes § 52-550 (a) (no action may be maintained upon loan agreement exceeding $50,0000 unless agreement made in writing).

The alleged oral modification was not effective for the additional reason that there was no evidence of adequate consideration. "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." *Thermoglaze, Inc.* v. *Morningside Gardens Co.*, 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). The defendant stated in her affidavit that she was advised to skip the July, 2009 regular payment and to make three consecutive payments of $1456.23 in August, September, and October, 2009. The total payments the defendant states that she was required to make under the alleged modification total $4368.69, which is less than the amount she was required to pay for that four month period under the terms of the loan agreement, which, at $1315.92 per month, totaled $5263.68. Payment of an existing obligation does not constitute valid consideration. See *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 73, 38 A.3d 1212 (2012) ("if the undertaking by one party is simply to perform the whole or part of what it promised in the original contract, this will not support a promise by the other party to perform what it had previously agreed to do and something more; or, to put the same matter in other words, an existing contract cannot be altered by mutual assent by an agreement merely to give one party a right or privilege, or subject the other party to a burden that it did not previously have"[internal quotation marks omitted]).

The defendant also argues that the court improperly granted summary judgment because a genuine issue of material fact existed in that the terms of the note and mortgage were modified by a "written offer from the plaintiff to the defendant." It is not clear what writing the defendant is referring to. The written agreements that were submitted by the parties include the original loan agreement, a July, 2009 "trial period plan," and November, 2009 and January, 2010 repayment agreements.

The trial period plan, which the plaintiff attached to its supplemental memorandum in support of summary judgment, undisputedly was entered into in July, 2009, between the defendant and GMAC Mortgage, LLC (GMAC),[5] the loan service provider. This agreement

was labeled "Home Affordable Modification Program Loan Workout Plan (Step One of Two-Step Documentation Process)." It stated that the defendant was unable to afford her mortgage payments and that the lender, GMAC, if conditions were met, would "provide [the defendant] with a Loan Modification Agreement . . . as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." Section 3 of the agreement provided for a "Trial Period Payment" plan in which the defendant would pay $1453.26 monthly for August, September, and October, 2009. The trial period payment plan provided that the defendant expressly understood that the "[p]lan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) [the defendant] meet[s] all of the conditions required for modification, (ii) [the defendant] receive[s] a full and executed copy of a modification agreement, and (iii) the Modification Effective Date has passed." The agreement also stated: "I further agree and understand that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan."

On July 31, 2009, the defendant filed for bankruptcy. By letter dated October 16, 2009, the plaintiff's counsel returned the defendant's check dated September 22, 2009, in the amount of $1453.26 and made payable to GMAC, to the defendant's counsel.[6] By letter dated October 16, 2009, the plaintiff notified the defendant that she was in default on the loan, and unless full payment of past due amounts was received, the loan would be accelerated, the obligation declared due, and foreclosure proceedings begun. The letter stated: "This is a demand for payment of the total amount due and owing as of the date of this letter, which is as follows . . . total amount due $4493.25." The letter indicated that the defendant "may cure the default by paying the total amount due . . . within thirty (30) days from receipt of this letter. . . . Payments must be made in certified funds or cashier's check. If funds tendered are not honored for any reason, the default will not be cured. . . . Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." The defendant offered no evidence before the trial court that she had repaid the amount due within thirty days. Rather, the defendant attached as an exhibit to her opposition to summary judgment, a repayment agreement, dated November 28, 2009, which provided that "[t]here is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust or equivalent security instrument . . . executed on 12/08/03, in the original principal amount of $15,4700.00. . . . The account is presently in default for non-payment to

Lender of the 08/01/09 installment and all subsequent monthly payments due on the Mortgage for principal, interest, escrows and charges." The defendant signed this agreement,[7] admitting to being in default on the note and mortgage.

The November, 2009 repayment agreement provided in paragraph 5 for a payment schedule in which GMAC agreed to "suspend, but not terminate foreclosure activity on the default account" provided that the defendant executed the agreement and paid monthly installments of $930. Paragraph 9 of the agreement provided: "Customer understands and agrees that all other provisions, covenants and agreements set forth in the Mortgage shall remain in full force and effect during the duration of this Agreement and thereafter, and this Agreement *shall not constitute a modification or extension of the Mortgage.*" (Emphasis added.) The January, 2010 repayment agreement also contained the same language as that in paragraphs 5[8] and 9 of the November 2009 repayment agreement. According to the clear language of the repayment agreements, agreed to by the defendant, those agreements were not modifications of the original loan agreement, but merely suspended foreclosure proceedings. See *Connecticut National Bank* v. *Rehab Associates*, 300 Conn. 314, 319, 12 A.3d 995 (2011) (interpretation of definitive contract language is question of law subject to plenary review by this court). The defendant has not directed us to any language in any written agreement that provides that the note and mortgage had been modified.

The defendant, then, did not submit evidence sufficient to create a genuine issue of material fact as to whether there had been a modification of the original mortgage note or the existence of a default. The clear and unambiguous meaning of the 2009 documents effectively provided for a brief suspension of foreclosure activity to give the defendant the conditional opportunity to renegotiate. The documents clearly and expressly did not modify the obligations set forth in the original loan agreement. Accordingly, there is no genuine issue of material fact as to whether the original loan agreement was modified, and, therefore, the court did not err in granting the plaintiff's motion for summary judgment as to liability.

II

The defendant next claims that the court erred in rendering a judgment of strict foreclosure. We disagree.

"The standard of review of a judgment of foreclosure by sale or by strict foreclosure is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited

to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . . Where a foreclosure defendant's liability has been established by summary judgment, all that remains for the court to determine at the judgment hearing is the amount of the debt and the terms of the judgment." (Citation omitted; internal quotation marks omitted.) *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 186, 73 A.3d 742 (2013).

On October 10, 2012, after a hearing concerning the plaintiff's debt and the value of the property, the court rendered a judgment of strict foreclosure. The debt amounted to $146,736.52, and the fair market value of the property was determined to be $130,000. The plaintiff had submitted into evidence a July 24, 2012 appraisal that valued the property at $130,000. The defendant stated at the hearing that, according to various affidavits by the plaintiff's appraisers, the property had been valued at $100,000 in March, 2010, $120,000 in May, 2011, and $130,000 in July, 2012. The defendant argued that, in light of the economic recession, the later increased value was not credible.[9]

The defendant argues that the court erred in determining the fair market value of the property. She contends that "[m]indful of these economic times, the court should have required more specific evidence of the value of the subject property." The defendant further argues that "the proposed value submitted by the plaintiff was not credible." The court had before it the July, 2012 affidavit from the plaintiff's appraiser assessing the fair market value of the property to be $130,000. The court's finding in this regard was not clearly erroneous. Accordingly, we cannot conclude that the court abused its discretion in rendering a judgment of strict foreclosure.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

* The listing of the judges reflects their seniority status on this court as of the date of oral argument.

[1] Lynn DeGennaro is also known as Lynsie Justine DeGennaro. Mortgage Electronic Registration Systems, Inc., was also named as a defendant in this action. DeGennaro is the only defendant involved in this appeal, and, for the sake of clarity, we refer in this opinion to her as the defendant.

[2] On October 10, 2012, the court granted the named plaintiff's motion to substitute Deutsche Bank Trust Company Americas, as Trustee for RALI 2004-QS6, as the plaintiff. For convenience, we refer in this opinion to the named plaintiff and the substitute plaintiff collectively as the plaintiff.

[3] The defendant also argues that she "consistently denied" that she had defaulted on the terms of the mortgage. To the extent that the defendant's argument in this regard relies on the existence of a loan modification, it fails because we conclude that there is no genuine issue of material fact as to the nonexistence of a valid loan modification agreement. Furthermore, the defendant asserts in her appellate brief that she denied in her answer that she was in default. A denial in an answer does not by itself create a genuine issue of material fact. See *Busconi* v. *Dighello*, 39 Conn. App. 753, 770–72, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903, 670 A.2d 321 (1996).

[4] As recognized in *Union Trust Co.* v. *Jackson*, supra, 42 Conn. App. 419, the statute of frauds may be avoided by partial performance, or equitable

reliance. No sufficient facts in avoidance were offered in this case.

[5] The plaintiff submitted as an exhibit attached to its motion for summary judgment an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc., to the plaintiff. This evidence was undisputed.

[6] The plaintiff argued in its memorandum of law supporting its motion for summary judgment that the defendant failed to make payments beginning in September, 2009, and failed to cure her default.

[7] The January, 2010 repayment agreement generally contained the same language.

[8] Paragraph 5 of the January, 2010 repayment agreement did not specify an amount due per month, but, nonetheless, did specify that in return for certain monthly payments GMAC agreed to "suspend, but not terminate foreclosure activity on the default account."

[9] Additionally, the defendant appears to claim that the court erred by ascribing too *high* a value. In the context of strict foreclosure, it is difficult to see how an overly generous assessment of fair market value could harm the defendant.