******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JACEK I. SMIGELSKI *v.* MARK A. DUBOIS,
CHIEF DISCIPLINARY COUNSEL
(AC 35793)

DiPentima, C. J., and Alvord and Keller, Js.

*Argued April 14—officially released September 30, 2014*

(Appeal from Superior Court, judicial district of New Britain, Abrams, J.)

*Jacek I. Smigelski*, self-represented, the appellant (petitioner).

*Suzanne B. Sutton*, first assistant chief disciplinary counsel, with whom was *Beth Baldwin*, assistant disciplinary counsel, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Jacek I. Smigelski, an attorney formerly licensed to practice law in the state of Connecticut, appeals from the summary judgment rendered in favor of the respondent, Mark A. Dubois, chief disciplinary counsel, on the petitioner's petition for a new trial.[1] On appeal, the petitioner claims that the trial court improperly determined that, as a matter of law, the petitioner was not entitled to a new trial because (1) there was no newly discovered evidence upon which the petitioner could base his claim; (2) the trial court did not render its judgment on the basis of fraud; and (3) the petitioner's right to due process of law had not been violated. The petitioner also argues that should a new trial be ordered, he is entitled to vacatur of several Superior Court and Appellate Court judgments related to this action that previously were rendered against him.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the petitioner's claims. The petitioner formerly was a defendant in a presentment action brought by the respondent, who at the time was chief disciplinary counsel for the state. See generally *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied, U.S. , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011). The presentment charged the petitioner with violating rules 1.5 (a) and 1.15 (b) of the Rules of Professional Conduct (2006) in connection with his representation of the estate of Stanislaw Kosiorek. The petitioner was retained by written agreement by the executor of the estate, Stanley Kosiorek.[3] The retainer agreement provided that "the fee for legal services rendered by [the petitioner], will be based on an hourly charge of $225.00 per hour or it will be contingent upon recovery of benefits and shall be ONE-THIRD of the gross judgment or settlement, which ever amount is greater." Additionally, Stanley Kosiorek paid the petitioner a retainer of $5000.

Specifically, the petitioner was retained by the estate to assist it in clearing the title to a property located at 28 Terra Road in Plainville. After Stanislaw Kosiorek's death, the heirs discovered that, less than one year earlier, he had married Bronislawa Kosiorek and had transferred to her a survivorship interest, by way of a quitclaim deed, in the Terra Road property. The property was the estate's only asset. Suspecting that Bronislawa Kosiorek, who was nineteen years younger than her late husband, had exercised undue influence or engaged in outright forgery in obtaining the survivorship interest in the property, the heirs brought a civil action to have the transfer set aside. Settlement negotiations, however, had broken down when Bronislawa Kosiorek refused to accept a payment of less than

$45,000 to execute a quitclaim of the property back to the estate. The petitioner eventually assisted the heirs in obtaining a favorable settlement with Bronislawa Kosiorek, paying her $35,000, instead of the $45,000 that she originally demanded, in exchange for a quitclaim deed of the property back to the estate.[4]

Thereafter, with the approval of the Plainville Probate Court, the heirs agreed to sell the Terra Road property to Stanley Kosiorek's son and daughter-in-law, Adam Kosiorek and Kylie Kosiorek, for $212,500. The heirs also agreed that to facilitate the sale of the property, the estate would contribute to the buyer a "gift of equity" in the amount of $42,500 as a down payment for the buyers' mortgage. On December 21, 2006, the petitioner represented the estate at the closing for the sale of the property where Stanley Kosiorek signed the paperwork and authorized a check in the amount of $155,300.82,[5] the proceeds from the sale, to be made out to "Jacek Smigelski, Trustee."

On December 26, 2006, Stanley Kosiorek went to the petitioner's office to retrieve the check for the funds payable to the estate. The petitioner explained that the value of the property was $257,000, and, under the terms of the retainer agreement, his fees amounted to one third of that amount, or $85,665.81. Significantly, the petitioner relied on a comparative market analysis that valued the property at $257,000 in calculating his fee. The petitioner added to his fee $1004.99 in probate fees and subtracted the retainer of $5000 as well as a "courtesy" discount of $14,832.48, resulting in a total due to the petitioner of $66,838.32 in legal fees. This amount was subtracted from the net proceeds of the closing and paid to the petitioner, leaving the estate with $88,462.50.

On December 30, 2006, Stanley Kosiorek's brother, Kazimierz Kosiorek,[6] filed a complaint with the Statewide Grievance Committee in which he alleged that the petitioner had violated rules 1.5 (a)[7] and 1.15 (b)[8] of the Rules of Professional Conduct (2006) by withholding a portion of the settlement proceeds from the sale of the property by the estate, which Kazimierz Kosiorek alleged rightfully belonged to the estate.[9]

Following a finding of probable cause by a local grievance panel, the reviewing committee of the Statewide Grievance Committee held an evidentiary hearing at which the respondent tried the case. Pursuant to Practice Book § 2-47, the Statewide Grievance Committee thereafter issued a decision in which it directed disciplinary counsel to file a presentment against the petitioner in the Superior Court. The presentment filed by disciplinary counsel, dated November 28, 2008, charged the petitioner with violating rule 1.5 (a) of the Rules of Professional Conduct (2006) by charging a fee that was unreasonable in light of the relevant circumstances and violating rule 1.15 (b) of the Rules of Professional Con-

duct (2006) by distributing funds to himself, as his fee, out of the proceeds of the sale of the property rather than seeking payment from the executor and for refusing to return the proceeds upon demand.

The presentment was tried before the court, *Pittman, J.*, by Assistant Chief Disciplinary Counsel Suzanne B. Sutton over the course of two days. On August 31, 2009, in a memorandum of decision, the court found that the disciplinary counsel had proven by clear and convincing evidence that the petitioner, intentionally and wilfully, had violated rule 1.5 (a) of the Rules of Professional Conduct (2006) by charging an unreasonable fee, and accordingly ordered a three month period of suspension from the practice of law.[10] The court also found that the petitioner had violated rule 1.15 (b) of the Rules of Professional Conduct (2006) by distributing funds to himself, as his fee, out of the sale proceeds instead of seeking payment from the executor of the estate, and for refusing to return those sums to the estate, as ordered by the Probate Court; see footnote 9 of this opinion; or to place them in escrow as ordered by the presentment court, *Pittman, J.* Accordingly, the court imposed an additional twelve month suspension from the practice of law.[11] On appeal, this court affirmed the trial court's decision. See *Disciplinary Counsel* v. *Smigelski*, supra, 124 Conn. App. 81.

Prior to the presentment proceeding, in 2007, Stanley Kosiorek, as executor of his father's estate, brought a civil action against the petitioner. See *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013). During the course of those proceedings, it was revealed that a real estate appraisal of the property, dated September 29, 2006, had been performed which valued the property at $254,000.[12] This appraisal was included as an itemized payment on the United States Department of Housing and Urban Development's HUD-1 settlement statement (HUD-1) that had been prepared in connection with the buyers' application for a mortgage. Specifically, the HUD-1 listed, as an item payable from the borrower's funds at settlement, an "Appraisal Fee" payable to "L.R. Evjen Appraisal Services" in the amount of $350. When the grievance proceedings commenced, the HUD-1 was sent to the petitioner as an exhibit attached to the grievance complaint. The petitioner acknowledged receipt of the grievance complaint in a response dated February 2, 2007. The September 29, 2006 appraisal was not used as evidence in the presentment action.

The petitioner filed the present petition for a new trial on October 28, 2010. Therein, the petitioner made the following allegations. Both the grievance panel and the reviewing committee, in finding probable cause that the petitioner had committed professional misconduct by charging an unreasonable fee, "substantially relied on the 'gross value of real estate' or the [comparative]

market analysis," which valued the property at $257,000. The petitioner also alleges that the trial court, in rendering its final decision against the petitioner, also "substantially relie[d]" on the comparative market analysis valuing the property at $257,000.[13]

Further, the petitioner alleges that Stanley Kosiorek had been aware of the September 29, 2006 appraisal since September, 2006, but "intentionally failed to disclose [the appraisal] and fraudulently manipulated [the] court, the grievance panel, [and] the reviewing committee . . . in order to pervert or subvert the truth . . . ." Similarly, the petitioner alleges that the respondent "knew or should have known about this appraisal . . . but negligently or intentionally failed to disclose [it] to the disciplinary grievance panel, to the reviewing committee, or to the court or to the [petitioner]." The petitioner alleges that Stanley Kosiorek committed fraud by misrepresenting to the court that there was an additional appraisal valuing the property at $170,000, rather than $254,000, and that disciplinary counsel should have corrected the misrepresentation, implicating the petitioner's right to due process of law.[14] The gravamen of the petitioner's allegations appears to be that because the property values in the comparative market analysis and the September, 29, 2006 appraisal are "virtually identical," the grievance panel, the reviewing committee, and the court likely would have found the petitioner's fee reasonable had they been aware of the September, 29, 2006 appraisal. The petitioner appears to argue that because these two valuations indicate a relatively high market value, as opposed to the $170,000 figure stated at trial, the court would have found his $66,838.32 fee to be reasonable.

The respondent filed a motion for summary judgment and memorandum of law on October 2, 2012, to which the petitioner objected. Therein, the respondent argued that he was entitled to summary judgment as a matter of law in the absence of any genuine issue of material fact as to whether (1) the September 29, 2006 appraisal does not constitute newly discovered evidence and therefore is not grounds for a new trial; and (2) the judgment rendered against the petitioner was not obtained as a result of fraud on the court. In the petitioner's memorandum of law in opposition to the motion for summary judgment, he rejected the respondent's claims and asserted that he is entitled to a new trial on the ground that his right to due process was violated by the respondent's failure to disclose the September 29, 2006 appraisal or correct Stanley Kosiorek's testimony that the property was appraised at $170,000. In support of its motion for summary judgment, the respondent submitted, inter alia, the affidavits of Assistant Chief Disciplinary Counsel Sutton and Elizabeth M. Rowe, assistant bar counsel for the Office of Statewide Bar Counsel. The petitioner submitted, in addition to other documentary evidence, his own affidavit.

Oral argument on the motion for summary judgment was heard on January 22, 2013, and the court, *Abrams, J.*, issued a written order and memorandum of decision granting the respondent's motion on May 9, 2013. Therein, the court concluded that "the [petitioner] reasonably could have discovered the September 29, 2006 appraisal in the exercise of due diligence in preparation for his 2008 presentment trial and, as a result, the appraisal does not constitute newly discovered evidence, entitling the [respondent] to judgment as a matter of law . . . ." The court then found that there was no genuine issue of material fact as to the issues of whether the judgment rendered against the petitioner was granted on the basis of fraud, or whether the petitioner's right to due process was violated. Accordingly, the court granted the respondent's motion for summary judgment. The petitioner filed a motion to reargue on May 28, 2013, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the standard of review and other legal principles that guide our analysis. "The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a moving party's] motion for summary judgment is plenary. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [I]t is only [o]nce [the] [movant's] burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] [nonmovant] to show that a genuine issue of fact exists justifying a trial." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank Trust Co. Americas* v. *DeGennaro*, 149 Conn. App. 784, 786–87, 89 A.3d 969 (2014).

I

The petitioner argues that the court improperly concluded that as a matter of law, the September 29, 2006 appraisal did not constitute newly discovered evidence upon which the petitioner could base his claim for a new trial. We are not persuaded.

The petitioner argues that because the September 29, 2006 appraisal constitutes new evidence, he was entitled to a new trial pursuant to General Statutes § 52-270 (a). Section 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, *the discovery of new evidence* or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed . . . ." (Emphasis added.) "The statute applies to criminal as well as civil actions." *Thomas* v. *State*, 130 Conn. App. 533, 544, 24 A.3d 12, cert. denied, 302 Conn. 945, 30 A.3d 2 (2011).

"Pursuant to § 52-270, a [party] may petition the Superior Court for a new trial on the basis of newly discovered evidence. See Practice Book § 42-55. A trial court's decision on that ground is governed by the standard set forth in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), and further refined in *Shabazz* v. *State*, 259 Conn. 811, 827–28, 792 A.2d 797 (2002). Under the *Asherman* standard, a court is justified in granting a petition for a new trial when the petitioner demonstrates that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously despite the exercise of due diligence; (2) would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial. . . . This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by posttrial motions except for a compelling reason. . . .

"[I]n determining whether a different result would be produced in a new trial, a trial court necessarily must engage in some form of credibility analysis. . . . The trial court must always consider the newly discovered evidence in the context of the evidence presented in the original trial. . . . [Thus, if] the trial court determines that the evidence is sufficiently credible so that, if a second [finder of fact] were to consider it together with all of the original trial evidence, it probably would yield a different result or otherwise avoid an injustice, the fourth element of the *Asherman* test would be satisfied. . . . By a different result, we mean that the new evidence would be likely to result in acquittal of the petitioner, not merely that it might cause one or more jurors to have a reasonable doubt about the petitioner's guilt. . . . Finally and significantly, it is well settled that whether the evidence satisfies the aforementioned standard is within the trial court's sole discretion, and

the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Skakel* v. *State*, 295 Conn. 447, 466–68, 991 A.2d 414 (2010).

"Whether trial counsel has fulfilled his or her duty to conduct a reasonable investigation forms the linchpin issue in a petition for a new trial made on the basis of newly discovered evidence. [T]o entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted. . . . Therefore, [t]he [petitioner] has the burden of proving that the evidence . . . could not have been discovered and produced [in] the former trial by the exercise of due diligence . . . . Due diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible. . . . The question which must be answered is not what evidence might have been discovered, but rather what evidence would have been discovered by a reasonable [petitioner] by persevering application, [and] untiring efforts in good earnest." (Citations omitted; internal quotation marks omitted.) Id., 506–507.

On the basis of the evidence before it, the court first turned to the issue of whether the evidence offered in support of the petitioner's claim for a new trial was newly discovered, meaning that it could not have been discovered previously despite the exercise of due diligence. The court determined that the "[respondent] had produced evidence to show the nonexistence of any genuine issue of material fact as to [the] claim that the September 29, 2006 appraisal does not constitute newly discovered evidence because the [petitioner] reasonably could have discovered the appraisal at the time of his trial through the exercise of due diligence." In turn, the petitioner failed to produce any evidence that gave rise to a disputed issue of material fact concerning whether the appraisal was unknown or undiscoverable through the exercise of due diligence at or prior to the presentation. We agree with the court.

The petitioner in the present case hardly can argue that he presented the court with evidence demonstrating that he employed "persevering application, [and] untiring efforts in good earnest" to discover the contents of the appraisal at issue. (Internal quotation marks omitted.) *Skakel* v. *State*, supra, 295 Conn. 507. As the court noted, the petitioner was in possession of a copy of the HUD-1 form that indicated that an "appraisal fee" in the amount of $350 was to be paid by the buyers to "L.R. Evjen Appraisal Services." Rowe, an assistant bar counsel with the Office of Statewide Bar Counsel, averred in her affidavit that in the course of her duties

assisting the Statewide Grievance Committee, she sent to the petitioner a copy of the grievance complaint filed against him. Attached to the grievance complaint was a copy of the HUD-1, dated December 21, 2006, and noting the payment of an appraisal fee. She further averred that the copy of the grievance complaint and HUD-1 were not returned to her. The petitioner has failed to present any evidence indicating that he did not receive the complaint and HUD-1, and, indeed, he responded to the complaint in a letter dated February 2, 2007, in which he acknowledged the complaint against him.

A reasonable investigation and reading of the HUD-1 certainly would have notified the petitioner of the existence of a real estate appraisal aside from the comparative market analysis on which he ultimately relied in calculating his fee. Although the HUD-1 simply reveals the existence of the appraisal, and not its contents, the petitioner does not offer any evidence to suggest that the appraisal could not have been discovered through the exercise of due diligence. Indeed, he offers no evidence or explanation as to what efforts he undertook to learn of the September 29, 2006 appraisal. "[T]he burden of showing due diligence [rests] solely and throughout on the [petitioner]." (Internal quotation marks omitted.) *Terracino* v. *Fairway Asset Management, Inc.*, 75 Conn. App. 63, 75, 815 A.2d 157, cert. denied, 263 Conn. 920, 822 A.2d 245 (2003); see also *Asherman* v. *State*, supra, 202 Conn. 434 ("[t]he petitioner must demonstrate, by a preponderance of the evidence, that . . . the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence"). The petitioner has failed to meet his burden of showing that there was an issue of genuine fact as to whether he exercised due diligence in attempting to discover and obtain the appraisal. Indeed, a thorough review of the record indicates the opposite.

"[D]ue diligence is a condition precedent to successfully prosecuting a petition for a new trial . . . ." (Citation omitted.) *Terracino* v. *Fairway Asset Management, Inc.*, supra, 75 Conn. App. 80. In light of our conclusion that the court correctly determined that, as a matter of law, and in the absence of any genuine issue of material fact, the petitioner failed to demonstrate that the September 29, 2006 appraisal could not have been discovered through the exercise of due diligence, we need not address whether the evidence was material to the issues or likely to produce a different result in a new trial.

II

The petitioner next claims that the court improperly granted the respondent's motion for summary judgment by finding, as a matter of law, that the judgment rendered against him was not a result of a fraud on the

court and that the petitioner therefore was not entitled to a new trial.

"[I]n all contexts, when one party has made fraudulent representations to a court, or caused a court to be misled in some way, it could be said generally that the party has committed fraud on the court. . . . The statutory remedy for fraud on the court is that the Superior Court may grant a new trial for reasonable cause; General Statutes § 52-270 (a); which includes every cause for which a court of equity could grant a new trial, such as, for example, fraud, accident and mistake." (Footnote omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, 129 Conn. App. 651, 659, 23 A.3d 1 (2011) aff'd, 308 Conn. 523, 69 A.3d 880 (2013). "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." (Internal quotation marks omitted.) *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991).

"In *Varley* v. *Varley*, 180 Conn. 1, 4, 428 A.2d 317 (1980), our Supreme Court imposed four requirements on those seeking relief from a judgment secured by fraud: '(1) There must have been no laches or unreasonable delay by the injured party after fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different.' . . . The court, in *Varley*, explained: 'Where an unsuccessful party has been prevented, by fraud or deception, from exhibiting fully his case . . . a new suit may be sustained to set aside and annul the former judgment and open the case for a new and fair hearing.' " (Footnote omitted.) *Duart* v. *Dept. of Correction*, 116 Conn. App. 758, 769, 977 A.2d 670 (2009), aff'd, 303 Conn. 479, 34 A.3d 343 (2012). Our Supreme Court later modified the fourth requirement and "rephras[ed] the fourth prong to require a movant to demonstrate a reasonable probability, rather than a substantial likelihood, that the result of a new trial will be different." *Duart* v. *Dept. of Correction*, 303 Conn. 479, 491, 34 A.3d 343 (2012).

The petitioner appears to argue that the judgment rendered against him was secured by fraud because Stanley Kosiorek represented to the court that a real estate appraisal had valued the property at $170,000, and the respondent failed to correct this misrepresentation where the appraisal valued the property at $254,000. We are not convinced. Although on redirect examination Stanley Kosiorek represented to the court that an additional appraisal performed in connection with Adam Kosiorek's application for a mortgage valued the property at $170,000, this statement was stricken from the record. See footnote 14 of this opinion. Additionally, Sutton, the assistant chief disciplinary counsel

who tried the presentment, averred in her affidavit that she was not in possession of the September 29, 2006 appraisal, nor had she ever sought to obtain it because she did not believe it to be relevant to the issues addressed in the grievance complaint. As such, she was unaware of the contents of the appraisal or the fact that Stanley Kosiorek's remark concerning $170,000, was, in fact, a misrepresentation. The petitioner failed to produce any evidence suggesting that the court was induced to render judgment against him on the basis of testimony that it had stricken from the record, or that the respondent permitted the court to be swayed by testimony that he knew to be false.

We therefore conclude that the court properly found that the petitioner failed to provide evidence during the hearing on the respondent's motion for summary judgment that supported his claim of fraud. Accordingly, the court properly granted the respondent's motion for summary judgment on the grounds of absence of fraud on the court.

### III

The petitioner finally claims that his rights to due process of law and a fair trial were violated by the respondent's "failure to correct the false and misleading testimony of [Stanley Kosiorek]," and failure to disclose the materially favorable evidence of the Evjen appraisal, in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[15] The petitioner argues that he is therefore entitled to a new trial. We disagree.

As a preliminary matter, we set forth the legal principles relevant to this due process claim. "Because a license to practice law is a vested property interest and disciplinary proceedings are adversary proceedings of a quasi-criminal nature, an attorney subject to discipline is entitled to due process of law. . . .

"Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. . . . In [presentment] proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to [an appellate] court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights. . . .

"The ultimate question is whether he is a fit person to be longer allowed the privileges of being an attorney. . . . His relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Citations omitted; internal quotation marks omitted.) *Disciplinary Counsel* v. *Villeneuve*, 126 Conn. App. 692, 701–702, 14 A.3d 358 (2011).

Recognizing that the petitioner's grievance hearing was *quasi-criminal* in nature, the trial court proceeded to analyze the petitioner's due process claim concerning the September 29, 2006 appraisal under *Brady*.[16] Neither party, before the trial court or on appeal, has questioned *Brady*'s applicability; both parties have briefed the present claim under *Brady* without citing any authority that supports the proposition that *Brady* applies in disciplinary proceedings brought against members of the bar. Despite the parties' reliance on *Brady*, however, it does not govern the present claim. In *Gonzalez* v. *State Elections Enforcement Commission*, 145 Conn. App. 458, 479, 77 A.3d 790, cert. denied, 310 Conn. 954, 81 A.3d 1181 (2013), this court held that *Brady* did not apply in a civil enforcement action brought by the state against a state representative. The court rejected the plaintiff's claim that the defendant, the State Elections Enforcement Commission, was required to provide her with exculpatory information during an administrative hearing held to determine whether she had violated state election law. Id., 476. This court, relying on relevant precedent, stated: "Our case law amply demonstrates that *Brady* applies only to defendants in criminal prosecutions. . . . Due process requires such an obligation to protect the innocent from erroneous conviction and ensur[e] the integrity of our *criminal justice system*. . . . This case is not a criminal action, but rather a civil enforcement action and, thus, the requirements of *Brady* do not apply." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 479. Although we recognize that a civil enforcement action, such as that at issue in *Gonzalez*, is distinguishable from a disciplinary hearing brought against a member of the bar, such as that at issue in the present case, it is clear that neither type of proceeding is a criminal prosecution. Because *Gonzalez* unambiguously limits *Brady*'s applicability to criminal prosecutions, we are guided by that decision and, thus, reject the petitioner's due process claim that the respondent had any obligation to correct Kosiorek's testimony or to provide him with any evidence favorable to his case.

The gist of the petitioner's claim is that the hearing was unfair because the respondent effectively suppressed evidence of the September 29, 2006 appraisal. Although we conclude that *Brady* does not apply in the present case, *Brady* nonetheless provides some guidance in our evaluation of the due process claim raised by the petitioner. "[I]t is well established that evidence is not considered to have been suppressed within the meaning of *the Brady doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence*. . . . The rationale underlying this exception to the state's disclosure obligation under *Brady* is obvious: *Brady* is designed to assure that the defendant is not denied access to exculpatory evidence

known or available to the state but unknown or unavailable to him. . . . It is not intended either to relieve the defense of its obligation diligently to seek evidence favorable to it or to permit the defense to close its eyes to information likely to lead to the discovery of such evidence." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 701–702, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). Even were we to consider the claim under the stringent standard codified in *Brady*, the petitioner has failed to present evidence demonstrating a genuine issue of material fact as to whether he was deprived of his rights to due process and a fair trial. As previously noted, the respondent presented evidence that the September 29, 2006 appraisal was disclosed on the HUD-1 form, which was sent to the petitioner and in his possession. Although the respondent did not produce the September 29, 2006 appraisal, the record reflects that the petitioner had actual notice of the existence of the appraisal by virtue of being listed on the HUD-1, and, accordingly, it was incumbent upon him to exercise due diligence and take advantage of that evidence.[17]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] As a result of professional misconduct that is the subject of this opinion, the petitioner was suspended from the practice of law for fifteen months, effective March 3, 2011. See generally *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied,      U.S.     , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011). The petitioner represents that as of the date of this appeal, he has not applied for reinstatement and is presently suspended from the practice of law.

[2] Specifically, the petitioner argues that we should exercise our supervisory power to vacate the following judgments: *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013); *Disciplinary Counsel* v. *Smigelski*, Superior Court, judicial district of New Britain, Docket No. CV-08-4019323 (August 31, 2009), aff'd, 124 Conn. App. 81, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied,      U.S.     , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011); and *Kosiorek* v. *Smigelski*, Superior Court, judicial district of New Britain, Docket No. CV-07-4014607 (December 1, 2011).

[3] Stanley Kosiorek is the son of Stanislaw Kosiorek.

[4] In the petitioner's direct appeal from the judgment rendered in the presentment proceeding, this court noted that the petitioner "acknowledged that 'I was asked just to draft the contract and go to Probate Court [to have the contract approved].' " *Disciplinary Counsel* v. *Smigelski*, supra, 124 Conn. App. 90 n.9. The petitioner "conceded that the legal services to which his fee agreement pertained did not include negotiation of the sales price of the Kosiorek estate's property." Id., 90.

[5] According to the United States Department of Housing and Urban Development's HUD-1 settlement statement prepared in connection with the closing, this sum represented the sales price of $212,500, less the gift of equity of $42,500, and less approximately $14,700 in adjustments and closing costs.

[6] Kazimierz Kosiorek, along with his seven brothers and sisters, are the heirs to the estate.

[7] Rule 1.5 (a) of the Rules of Professional Conduct (2006) provides: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

[8] Rule 1.15 (b) of the Rules of Professional Conduct (2006) provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

[9] On January 23, 2007, the Plainville Probate Court conducted a hearing on the final accounting for the estate, at which the petitioner appeared. In a memorandum of decision dated May 21, 2007, the court found that the petitioner's claimed fee of $66,838.32, in light of the $212,500 sales price of the property, was unreasonable. Instead, the Probate Court allowed for a fee of $15,000, plus $1000 for reimbursement of costs. The court ordered the petitioner to return the remaining sum of $54,833.33 to the estate. To date, the petitioner has neither complied with this order nor has he appealed from the Probate Court's decision.

[10] The court stated: "[I]n calculating the value of the recovery of the real estate as a benefit to the estate, [the petitioner] chose a figure as the value of the real estate that was not the fair market value. The figure $257,000 was an estimated sales price derived from a comparative market analysis . . . . The court finds the $257,000 figure to be objectively and subjectively unreasonable in light of the actual sales price for the real estate approved in 2006 by the Probate Court with the active participation of the [petitioner] who ultimately performed work on the closing."

[11] The court also imposed several conditions on the petitioner's reinstatement. In order to be readmitted to practice law, he was required to pass the Multistate Professional Responsibility Examination, as well as to "[place] the sum of $54,833.33 in escrow . . . ."

[12] The September 29, 2006 appraisal included a condition to this valuation. It stated: "The estimated value in this report is being done subject to installation of kitchen cabinets, countertops & flooring. The kitchen and half bath to have finished plumbing and new fixtures. The unfinished floors in the 3rd bedroom and finished lower level to have new finished flooring."

[13] In the direct appeal, this court observed that in calculating his fee, the petitioner, "immediately after the closing . . . relied on an estimated market price of $257,000 that bore no relationship to the sale price that the estate actually received for the property. . . . [T]here is no . . . nexus between the [petitioner's] services and the market value, however calculated, of the Kosiorek estate." *Disciplinary Counsel* v. *Smigelski*, supra, 124 Conn. App. 90.

[14] The following exchange occurred between disciplinary counsel and Stanley Kosiorek on redirect examination:

"Q. . . . Now, during [cross-examination], the comparative market analysis was brought to your attention.

"A. Mm-hm.

"Q. And during that time, you said something like, that was not our appraisal.

"A. Right.

"Q. Is there another appraisal?

"A. There was. Before that, the bank appraisal before the closing, before, the bank requires an appraisal for the buyers.

"Q. When you say the bank, what do you mean? What bank?

"A. Honestly, I can't recall that because that's the bank that they was going to get the mortgage from.

"Q. That who was going to get the mortgage?

"A. My son.

. . .

"Q. So, to your knowledge, they ordered an appraisal?

"A. Yeah, that mandatory that they have to have the mortgage appraisal— the house appraised for them to get the mortgage.

. . .

"Q. Okay. And do you know what that appraisal came in at, the value?

"A. One seventy."

The petitioner objected to Stanley Kosiorek's answer on the basis of hearsay and moved that his answer be stricken. The court sustained the objection and struck from the record Stanley Kosiorek's statement. The following exchange then occurred between disciplinary counsel and Stan-

ley Kosiorek:

"Q. And based on the appraisal that came in, was your son able to get a loan for the closing?

"A. Yes.

"Q. Was—based on $170,000 sale price?

"A. No. To get the hundred percent of the mortgage, they, for some reason, somehow, they raise it, two hundred and twelve, whatever.

"Q. And did your son borrow all $212,000?

"A. No."

"Q. How much did he borrow?

"A. One seventy."

[15] The petitioner asserts his right to due process of law under both the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

[16] *Brady* has direct applicability in criminal prosecutions, governing claims that the prosecution has suppressed material evidence that is favorable to an accused. See, e.g., *Small* v. *State*, 143 Conn. App. 655, 663, 70 A.3d 180 (2013), cert. denied, 311 Conn. 908, 83 A.3d 1163 (2014); *Davis* v. *Commissioner of Correction*, 140 Conn. App. 597, 606, 59 A.3d 403, cert. denied, 308 Conn. 920, 62 A.3d 1133 (2013).

[17] Because we affirm the judgment of the court granting the respondent's motion for summary judgment on the petitioner's petition for a new trial, we reject the petitioner's novel claim that, under the exercise of our supervisory authority, he is entitled to a vacatur of the judgments previously rendered against him. See footnote 2 of this opinion.